UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

*Electronically Filed*

| | |
|---|---|
| JAMES PAYTON SHOWERS | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **CASE NO. 1:24-CV-242-SEB-KMB** |
| | ) |
| SPECTRUM CHARTER | ) |
| COMMUNICATIONS, and | ) |
| JESSICA FISCHER | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT AND, ALTERNATIVELY, TO ENFORCE
PLAINTIFF'S JURY WAIVER**

## I.     INTRODUCTION

Charter Communications Operating, LLC[1] ("Charter") and Jessica Fischer ("Ms. Fischer"), who is an officer of Charter ("Officer", and with Charter, the "Defendants"), submit this memorandum in support of their motion to dismiss Plaintiff James Payton Showers' ("Plaintiff" or "Mr. Showers") Amended Complaint [DN 24] (the "Amended Complaint") and, alternatively, to enforce the Plaintiff's jury waiver.

Mr. Showers is a repeat *pro se* plaintiff, filing frivolous and bad faith claims, before this Court. The gravamen of Mr. Showers' action here is his assertion that he can use his internet service bill to pay that same bill. Indeed, Mr. Showers has previously filed an action against First Premier Bank ("First Premier" or the "Bank") and certain of its officers[2] wherein the Court dismissed his

---

[1] Mr. Showers incorrectly named the Defendant as Spectrum Charter Communications. However, Spectrum is a d/b/a of Charter Communications Operating, LLC and Spectrum Charter Communications is not its own entity.

[2] *See Showers v. First Premier, et al.*, Case No. 1:23-CV-02142-JRS-TAB, filed with the Court on November 29, 2023 (the "First Premier Action").

claims with prejudice after finding them to be frivolous. In the First Premier Action, the crux of Mr. Showers' claims was that the payment coupon portion of his credit card bill could be used as "legal tender" to pay his account balance.  In its April 3, 2024 Order On Motion To Dismiss (the "First Premier Order"), Judge Sweeney II rejected this argument, finding that "the 'bill statement' was not 'within the definition of a check'; Showers did not 'ma[k]e the bill of exchange into a complete check by writing upon the check "Payable to bearer" and writing his signature upon it.'"[3] *See First Premier* Order at p. 2. He further opined that "[t]he whole edifice is nonsense. (Indeed, the capital letters are a tipoff that Showers' beliefs share in that netherworld of unreason called, for convenience, the sovereign citizen movement…").  *Id.*  As such, the Court dismissed Mr. Showers' claims with prejudice because (1) "Showers' claims are frivolous" and (2) "a dismissal without prejudice would let Showers refile in this Court or another, which wastes everybody's time – and taxpayers' money, too…" *Id*. at 2-3.

Here, Mr. Showers' purported claims against Charter and its Officer are essentially the same – just related to his internet services account with Charter. The Amended Complaint seemingly alleges that Mr. Showers owes money to Charter for internet services which he has paid by tendering "a Bill of Exchange issued by Spectrum Charter Communications with an interest payment coupon attached…" Amended Complaint at ¶84.  The "bill of exchange" and the "interest payment coupon" to which Mr. Showers refers are actually the payment coupon portion of his bill. Because Charter and its Officer declined to follow Mr. Showers' instruction that they treat the form payment coupon as "payment," Mr. Showers alleges that they have breached the internet services contract and their fiduciary duties purportedly owing to him under the Federal Reserve Act. *Id*. at ¶¶102-110; ¶¶122-136.  The Amended Complaint further alleges that the Defendants have

---

[3] A copy of the First Premier Complaint, Order and Final Judgment are collectively attached at <u>Exhibit A</u>.

improperly refused Mr. Showers' legal tender by not accepting the payment coupon as payment on his account and that they have engaged in manipulative and deceptive practices under the Securities and Exchange Act of 1934. *Id.* at ¶¶111-121; ¶¶137-145.

Form billing coupons (*i.e.* payment stubs) attached to a monthly bill for internet services do not constitute legal tender or payment nor are they securities. Accordingly, not only do all of the claims in the Amended Complaint fail as a matter of law but they are also frivolous and non-sensical and the Amended Complaint must be dismissed with prejudice pursuant to Rule 12(b)(6). If Mr. Showers prevailed, no one in the United States would ever need to pay any bill for services provided.

Out of an abundance of caution, in the event that this case should be permitted to proceed, Charter and its Officer request that the Court enforce Mr. Showers' waiver of his right to a jury trial.

## II.    FACTUAL BACKGROUND

On or about November 21, 2023, Mr. Showers opened an account[4] with Charter for internet services. Charter sent Mr. Showers his first billing statement, dated November 21, 2023, that referenced Charter's General Terms and Conditions of Service ("Account Contract").[5] The Account Contract established the terms and conditions for Mr. Showers' internet services and relationship with Charter, and is the "account" to which the Amended Complaint refers.

The Account Contract states that the following forms of payment are accepted by Charter - check, electronic funds transfers and debit or credit card charge payment.[6] The Account Contract prohibits Mr. Showers, as the Subscriber, from assigning or otherwise transferring "[t]hese Terms

---

[4] The last seven digits of the account number are 0140610.
[5] A copy of the Account Contract is attached here at <u>Exhibit B</u> and as Exhibit A to Plaintiff's Complaint (page ID#359 to 383).
[6] *See* Account Contract at ¶3-4.

of Service and the Services and/or Equipment supplied by Spectrum" without specific written authorization from Spectrum.[7] The Account Contract also contains the following jury waiver:

> SUBSCRIBER AGREES THAT, BY ENTERING INTO THIS AGREEMENT, SUBSCRIBER AND SPECTRUM ARE WAIVING THE RIGHT TO A TRIAL BY JUDGE OR JURY.[8]

Following receipt of his first billing statement from Charter, dated November 21, 2023, Mr. Showers marked up and returned that statement to Charter.[9]  In particular, on the remittance coupon (*i.e.*, payment stub) showing that $89.99 was owing by him on his account, Mr. Showers wrote "Accepted for Deposit Pay to the Bearer eighty-nine and 99/100 without recourse for: JAMES SHOWERS/Principal By: Showers, James-Payton/Agent" while also stamping the back of the coupon as having been "accepted for deposit," apparently accompanied by his signature. Mr. Showers also stamped the top of the billing statement as being:

> For presentation to the United States Treasury, for redemption or in exchange for securities of a new issue, in accordance with written instructions submitted by
> _____

This was the purported delivery of "tender" that Charter refused to accept and of which Mr. Showers complains.

By letter dated December 7, 2023, addressed to Charter, Ms. Fischer and Karen Yu[10], Mr. Showers again requested that Charter "transfer the principal's balance to the principal's account for set-off using the bill of exchange and interest certificate you have given me, also deemed a 'bearer security'." [11]  The letter further demanded "the CFO to apply the principal's balance to the

---

[7] *Id*. at ¶16.

[8] *Id*. at ¶30.

[9] A copy of the November 21, 2023 statement that Mr. Showers returned to Charter is attached here at <u>Exhibit C</u> and is also included as part of Exhibit D to Plaintiff's Complaint (page ID #406 to 411).

[10] Mr. Showers' letter identifies Ms. Yu as the "Vice President of The Bank of New York Mellon Trust Company, N.A., as Indenture Trustee" and the Amended Complaint clarifies that Ms. You "apparently does not work for the Indenture Trustee any longer and therefore the notices were returned to the Plaintiff" (Amended Complaint at ¶100).

[11] A copy of the December 7, 2023 letter is attached here at <u>Exhibit D</u> and the marked-up version is also included as part of Exhibit D to the Amended Complaint (page ID#393 to 397).

principal's account for set-off each and every monthly billing-cycle," while directing that "the bearer security shall be applied to the account within 5 days of receipt of this notice, otherwise you will be in breach of contract of your fiduciary duties and a default judgment will be entered against you." In other words, Mr. Showers sought free internet services with his perpetual scam.

Charter sent Mr. Showers his next monthly statement, dated December 21, 2023, showing that $158.93 was now owing by him on his account.[12]  Mr. Showers *again* responded by writing "accepted for deposit without recourse pay to the bearer one-hundred fifty-eight 93/100" on the face of the payment stub while stamping the back as having been "accepted for deposit," apparently accompanied by his signature. Mr. Showers likewise included the following stamp on the top of the billing statement:

> For presentation to the United States Treasury, for redemption or in exchange for securities of a new issue, in accordance with written instructions submitted by _____

On January 9, 2024, Charter sent an email to Mr. Showers informing him that Charter does not accept a remittance coupon as payment for services.[13]  The email further listed acceptable forms of payment, *i.e.* cash, credit/debit card, electronic funds transfer, check or money order. After Charter disconnected Mr. Showers' account on January 9, 2024 for failure to pay, Mr. Showers made a credit card payment to Charter in the amount of $89.99 that same day.

On January 16, 2024, Mr. Showers sent Charter a "Final Notice of Default" in which he demanded Charter apply his remittance coupon as payment for services, stating that if Charter did not comply, "a judgment will be entered against [Charter]…in the amount of $5,000,000 to be paid

---

[12] A copy of the December 21, 2023 billing statement that Mr. Showers returned to Charter is attached at <u>Exhibit E</u> and the marked-up version is also included as part of Exhibit D to the Amended Complaint (page ID #426 to 427).
[13] *See* Exhibit F attached to Plaintiff's Amended Complaint (page ID #418), a copy of which is attached here at <u>Exhibit F</u> for the Court's convenience.

out to the United States Treasury pursuant to the Federal Reserve Act Section 29."[14] Charter responded by letter dated February 2, 2024, advising Mr. Showers that "the instrument sent with [his] payment does not have a valid ABA routing number. As such, [Charter] cannot accept it as payment."[15]

### III.    PLAINTIFF'S ALLEGATIONS IN THIS ACTION AND PROCEDURAL HISTORY

#### A.  Mr. Showers' Original Complaint

Mr. Showers filed his Complaint for a Civil Case (the "Original Complaint") against the Defendants on February 6, 2024. [DN 1]. Liberally construed, the Original Complaint alleged that Charter and its Officer breached their fiduciary duty when they declined to accept the payment coupon from Mr. Showers' billing statement as payment of that bill. *See* Original Complaint at ¶¶ III(1) and (2).

On April 8, 2024, Charter and its Officer filed a Motion to Dismiss Mr. Showers' claims against them for failure to state a claim including because the claims were frivolous.[16] [DN 8]. On April 26, 2024 Mr. Showers filed his response, to which the Defendants replied on May 2, 2024. [DN 11].

#### B.  The Motions For Leave To Amend

On May 3, 2024, Mr. Showers, realizing that the claims in his Original Complaint against Charter and its Officer would be subject to dismissal, given the First Premier ruling, filed a Support of [his] Opposition to the Motion to Dismiss, and additionally, a Request for Leave to Amend the Complaint. [DN 14]. On May 10, 2024, the Defendants moved to strike the May 3 filing. [DN 15].

---

[14] *See* Exhibit G attached to Plaintiff's Amended Complaint (page ID #420 to 425), a copy of which is attached here at Exhibit G for the Court's convenience.
[15] *See* Exhibit H attached to Plaintiff's Amended Complaint (page ID#429), a copy of which is attached here at Exhibit H for the Court's convenience.
[16] Per the Plaintiff's request, each of the Defendants waived service of the summons and the deadline by which they were required to respond to Plaintiff's Complaint was April 8, 2024.

By order entered May 30, 2024, the Court denied the request for leave to amend without prejudice, instructing Mr. Showers to file an amended complaint no later than June 21, 2024 if he wished to proceed. [DN 20]. That order also cautioned Mr. Showers as follows:

> If Mr. Showers seeks to bring similar claims in this action against the Defendants to the claims that he previously brought against First Premier Bank that were dismissed as "frivolous," *see Showers v. First Premier Bank,* Case No. 1:23-cv-2142-JRS-TAB, Mr. Showers is reminded that litigants can be sanctioned for frivolous or vexatious litigation. In addition to verbal reprimands and financial sanctions, courts may sanction *pro se* litigants by dismissing their lawsuits with prejudice or banning them from filing future lawsuits when verbal warnings and lesser sanctions have been insufficient to correct their misconduct. *See, e.g., Secrease v. Western and Southern Life ins. Co.,* 800 F.3d 397, 401 (7th Cir. 2015); *Dix Edelman Financial Services, LLC,* 978 F.3d 507, 521 (7th Cir. 2020).

*Id.*, pp. 2-3.

On June 14, 2024, Mr. Showers did exactly what this Court warned him against – he filed his second Motion for Leave to Amend with the Court.  [DN 21]. In it, Mr. Showers conceded that "[t]he majority of the causes of action in the original complaint filed by the Plaintiff, although accurate, is [sic] not enforceable in the civil Courts." [DN 21, p. 1]. On July 1, 2024, Defendants filed their Response in Opposition to Plaintiff's Motion for Leave to Amend. [DN 22]. On July 12, 2024, the Court entered its order granting Mr. Shower's Motion for Leave to File an Amended Complaint [DN 23], instructing the Clerk to lodge the Amended Complaint of record, and ordering that Defendants respond to the Amended Complaint within 21 days of the order (*i.e.* August 2, 2024).

### C.  The Amended Complaint

Mr. Showers' Amended Complaint relies on many of the same facts and legal theories as were alleged in the Original Complaint. In particular, he makes the following assertions:

1. "Spectrum Charter Communications is a financial institution in accordance with 31 U.S.C. § 5312(k)." *See* Amended Complaint at ¶6.

2. Spectrum Charter Communications is an 'institution-affiliated' party of the Federal Reserve in accordance with 12 U.S.C. § 1813(u). Therefore, Spectrum Charter Communications adheres to the Federal Reserve Act." *Id.* at ¶7.

3. "On November 21st, 2023, Plaintiff granted Spectrum Charter Communications a collateral security consisting of an application and note, which is described on its face 'residential general terms and conditions of service.'"[17] *Id.* at ¶10.

4. "The 'residential general terms and conditions of service' is a non-negotiable note or some similar type of instrument for these purposes, and ultimately serves as collateral for the application for Federal Reserve notes." *Id.* at ¶14.

5. "The Application [for Federal Reserve notes] issued by Spectrum and granted by the Plaintiff is named an 'acceptance certificate' within the S.E.C. filings of Charter Communications." *Id.* at ¶24.

6. "The Plaintiff granted a collateral security to the Defendant, which created the account over which the Defendant has a fiduciary obligation to." *Id*. at ¶58.

7. "The Plaintiff tendered instructions of how to apply the payments that were issued to him by the Defendant." *Id.* at ¶64.

8. "As a strategy to raise more capital, Spectrum Charter Communications will pledge their customer's receivables into a trust in which investors may invest in with the promise of receiving the money they invested back from Spectrum's customer's 'future payments' and receive dividend and interest payments in addition to the principal." *Id.* at ¶66.

9. "The bills of exchange tendered by the Plaintiff and issued by the Defendant are bonds with coupons attached." *Id.* at ¶82.

10. "The Plaintiff tendered a Bond/Bill of Exchange issued by Spectrum Charter Communications with an interest payment coupon attached and a Notice to the Defendants titled 'CLAIM TO INTEREST', dated 12/07/2023, in which the Plaintiff claimed all rights, titles, interest and equity owed to the principal's account. The Defendant was instructed to apply the principal's balance of the instrument to the account within 5 days of signature of the Certified Mail Return Receipt." *Id.* at ¶84.

11. "Upon the 5 day time limitation, the Plaintiff sent a 'NOTICE OF DEFAULT & OPPORTUNITY TO CURE', dated 12/26/2024, in which the Plaintiff again claimed all rights, titles, interest and equity owed to the principal's account. The Defendant was again instructed to apply the principal's balance to the account within 5 days of signature of the Certified Mail Return Receipt." *Id.* at ¶86.

---

[17] *See* Account Contract attached at <u>Exhibit B</u>.

12. "Upon the 5 day limitation of the Notice of Default, the Plaintiff sent a 'FINAL NOTICE OF DEFAULT', dated 01/16/2024, in which the Plaintiff again claimed all rights, titles, interest and equity owed to the principal's account. The Defendant was yet again instructed to apply the principal's balance to the account within 5 days of signature of the Certified Mail Return Receipt." *Id.* at ¶91.

13. "The bottom portion of the instrument, the Interest Certificate or Payment Coupon, was accepted, indorsed without recourse and made payable to bearer, and ordered to be deposited into the account JAMES SHOWERS." *Id.* at ¶97.

14. "The Plaintiff wrote upon the Coupon, which is an unconditional order for payment of an account, negotiable words to negotiate and transfer the coupon to the account." *Id.* at ¶114.

The Amended Complaint contains a breach of contract claim (Count One), a claim for the refusal of tender of payment (Count Two), a breach of fiduciary claim under the FRA (Count Three) and a manipulative and deceptive practices claim under the Securities and Exchange Act (Count Four). Indeed, the only seemingly new allegation of substance is the claim for manipulative and deceptive practices contained in Count Four.[18]

### D. Mr. Showers' Frivolous Claims in the Previously Dismissed First Premier Action

Approximately three months before Mr. Showers filed this action, he filed a *pro se* Complaint for Civil Case against First Premier Bank and certain of its officers (the "First Premier Complaint"). *First Premier* DN. 1. As here, the First Premier Complaint alleged that the First Premier defendants breached their fiduciary duties to Mr. Showers when First Premier declined to accept the payment coupon from Mr. Showers' credit card bill as payment of that bill. *Id.* at ¶¶ I(A) and (B)(3). In particular, Mr. Showers alleged that, "Plaintiff delivered legal tender to the defendents [sic] with instructions of how to apply the tender. Defendants [sic] dishonered [sic] the

---

[18] Mr. Showers' Original Complaint alleged that 18 U.S.C. §1348 – a criminal statute that pertains to securities and commodities fraud – was at issue. However, he did not explicitly allege a claim under the Securities and Exchange Act.

tender and refuse to apply it to the account in question." *Id.* at ¶ III. Mr. Showers further alleged that the "Plaintiff desires the tender to be applied to the account for this and all future payments. Plaintiff desires that the defendents [sic] will pay no less than $20,415,000 to the U.S. Treasury for their breach of fiduciary duties." *Id.* at ¶¶ III and IV.

The First Premier Complaint purportedly asserted claims against the First Premier defendants for breach of fiduciary duty and relied, in part, on the FRA and on §3-603 of the Uniform Commercial Code governing tender of payment, among other statutory provisions.

On February 12, 2024, the First Premier defendants filed their Motion to Dismiss the First Premier Complaint for failure to state a claim. *First Premier* DN 15.

On March 27, 2024, Mr. Showers filed his response arguing that the credit application and cardmember contract were not only collateral securities, but also negotiable instruments with the cardmember contract being a promissory note (seemingly payable by First Premier to Mr. Showers). *First Premier* DN 19 at 2. According to the response, when Mr. Showers attempted to use the theoretical interest he contended was generated by the collateral securities (*i.e.,* the coupon remittance stub from his bill), First Premier unjustifiably refused to honor his supposed legal tender. *Id.*

On April 2, 2024, the First Premier Court entered the First Premier Order in which it found Mr. Showers' claims were frivolous.[19] Among other things, it held that:

> "JAMES PAYTON SHOWERS" is not "a bank"; "James Payton Showers" is not "the beneficial owner of JAMES PAYTON SHOWERS"; the "Cardmember Contract" is not "a negotiable instrument, indorsed by the Plaintiff in blank"; the "bill statement" was not "within the definition of a check"; Showers did not "ma[k]e the bill of exchange into a complete check by writing upon the check 'Payable to bearer' and writing his signature upon it"; "JAMES SHOWERS" is not "a member bank of the Federal Reserve"; and the so-called "bill of exchange" is not a "collateral security in accordance with 12 U.S.C. § 412." (*Contra* Pl.'s Resp.

---

[19] *See* First Premier Order attached at Exhibit A.

1-7, ECF No. 19.) The whole edifice is nonsense. (Indeed, the capital letters are a tipoff that Showers' beliefs share in that netherworld of unreason called, for convenience, the sovereign citizen movement. *Bey v. State,* 847 F.3d 559, 560-61 (7th Cir. 2017) (explaining sovereign citizen background), *United States v. Benabe,* 654 F.3d 753, 767 (7th Cir. 2011) ("These [sovereign citizen] theories should be rejected summarily, however they are presented.") *see also Vongermeien v. United States Tr.,* No. 23-CV-0823-BHL, 2023 WL 4685858, at *1 (E.D. Wis. July 21, 2023) (listing the all-capital-letter name as among diagnostic signs of sovereign citizens' "shopworn" arguments), *Sabrina v. Scott Credit Union,* No. 3:23-CV-03611-JPG, 2023 WL 8470105, at *1 (S.D. Ill. Dec. 7, 2023) (rejecting similar banking theories as an "attempt to pervert the justice system").)

Nonsense claims are, rightly or wrongly, said not to engage this Court's jurisdiction, *Bell v. Hood,* 327 U.S. 678, 682 (1946) (at once announcing and questioning the rule), and usually dismissals for want of jurisdiction are without prejudice, *El v. AmeriCredit Fin. Servs., Inc.,* 710 F.3d 748, 751 (7th Cir. 2013). That would mean the Court must dismiss this case without prejudice. But a dismissal without prejudice would let Showers refile in this Court or another, which wastes everybody's time – and taxpayers' money, too. *See U.S. ex rel. Garst v. Lockheed-Martin Cor.,* 328 F.3d 374,378 (7th Cir. 2003). Fortunately, there is an exception to deal with just this circumstance: "a suit that either is frivolous or … intended to harass, can justifiably be dismissed with prejudice to avoid burdening the court system with a future suit that should not be brough – anywhere." *Georgakis v. Illinois State Univ.,* 722 F.3d 1075, 1078 (7th Cir. 2013) (citing *United States v. Funds in the Amount of $574,840,* 719 F.3d 648, 652 (7th Cir. 2013) and *El,* 710 F.3d at 751). That is much the best course here; there is no reason to indulge Showers any further.

*Id.* at pp. 2-3. Because the First Premier Court found that the claims were frivolous, that Court "[had] no need to discuss exactly how they fail[ed]." *Id.* at footnote 1. The First Premier Court further agreed that, if the claims had not been frivolous, "they would nonetheless be dismissed for failure to state a claim…" *Id.* Accordingly, the First Premier Court issued a Final Judgment in favor of First Premier and its Officers on all claims. *First Premier* DN 22.

## IV.    <u>ARGUMENT</u>

### A.  Mr. Showers' Complaint Utterly Fails to State Any Claim Upon Which Relief Can Be Granted Against Charter and Its Officer

#### 1.  <u>Standard of Review</u>

Rule 12(b)(6) mandates the dismissal of a plaintiff's complaint where the pleading's allegations "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must plead facts—not merely "labels and conclusions"—that on their face plausibly suggest entitlement to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("Although detailed factual allegations are not required, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'").

As the U.S. Supreme Court has explained, "**facts that are merely consistent with a defendant's liability … stop[] short of the line between possibility and plausibility."** *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (emphasis added). Rather, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see Puma v. Hall*, 2009 WL 5068629, at * 2-3 (S.D. Ind. Dec. 17, 2009) (discussing in detail the *Iqbal* requirement that conclusory factual and legal allegations are not sufficient to survive a motion to dismiss).

Because the Amended Complaint has failed to state a claim upon which relief may be granted against Charter and its Officer, it must be dismissed with prejudice.

2.   Count One of the Amended Complaint Fails to State a Claim Upon Which Relief Can Be Granted Because It Does Not Allege all of the Basic Elements of a Breach of Contract Claim

    *a. Mr. Showers Did Not Submit Valid Legal Tender*

To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from the breach. *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 928 (Ind. 2012). While Charter and its Officer do not dispute the existence of the Account Contract, the Amended Complaint fails to state a claim for breach of the Account Contract.

Count One of the Amended Complaint first alleges that Charter and Its Officer breached the Account Contract by refusing to accept an undefined "legal tender" and failing to apply the alleged tender upon receipt of same.  Amended Complaint at ¶108.  However, there can be no breach of contract for failure to accept a payment where there was no valid legal tender – *i.e*., no actual money was tendered to Charter by Mr. Showers. Indeed, the Amended Complaint describes the supposed "legal tender" as follows: "the coupon, attached to the bond tendered by the Plaintiff, is a negotiable instrument made payable to bearer by the Plaintiff. The tender made by the Plaintiff constitutes a legal tender and is in accordance with the law." *Id*. at ¶¶ 106-107. Mr. Showers alternatively describes the "legal tender" as a "bill of exchange…with an interest payment coupon attached…" to be applied to "the principal's balance of the instrument to the account…" *Id*. at ¶84. Examples of these "legal tenders" that Mr. Showers allegedly submitted to Charter are attached at Exhibit C and Exhibit E with one such example depicted here.[20]

---

[20] These "bills of exchange" were included as part of the exhibits Mr. Showers attached to his Motion for Leave to Amend and have the following PageIDs – 272, 274, 276, and 292.



Payment stubs attached to a billing statement have no legal effect and refusal by a service provider to accept the payment stub alone in payment of services provided will not discharge the debt.

Mr. Showers' claim that he can tear off the bottom of his billing statement and send in that, and nothing else, is in utter bad faith, but it is not original. From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of "bills of exchange" have been dismissed as frivolous. *See In re Marriage of Edwards,* 2008 WL 2854829 at *4 (Cal.App. 5 Dist. July 25, 2008) ("More important, tender of the documents, including the bill of exchange, was a sham and did not constitute merely a defective tender of payment; instead, 'it amounted to no tender at all.' (citing *McElroy v. Chase Manhattan Mortg. Corp.,* 134 Cal.App.4th 388 (Cal.App. 4 Dist.2005). Respondent had no obligation to respond to the sham tender of payment, whether by specific objection or otherwise."); *see also Mould v. Saxon Mortg. Servs., Inc.,* 2005 WL 1950268, at *2 (W.D.Wash.) (Aug. 12, 2005) (dismissing claim that plaintiffs' debt was discharged by offering bill of exchange for failure to state a claim); *McElroy,* 134 Cal.App.4th 388, 393 (Cal.App. 4 Dist.2005) ("we unhesitatingly conclude the Bill is a worthless piece of paper, consisting of nothing more than a string of words that sound as though they belong in a legal document, but which, in reality, are incomprehensible, signifying nothing."). In *Bryant v.*

14

*Washington Mutual Bank,* the court recognized that not all bills of exchange are illegitimate by definition, but that plaintiff failed to show that the bills of exchange she sent as payment were valid. 524 F.Supp.2d 753, 758 (W.D. Va. 2007).

To the extent that Mr. Showers' claims can be construed as alleging that refusal of the "legal tender" is grounds for breach of contract, the argument fails because the tendered payment stub is not a valid form of payment. Indeed, Charter repeatedly told Mr. Showers that it would only accept payments via debit/credit card, check, EFT, money order, or cash, as payment on his account. *See* Exhibits F and H.

### b. The Account Contract Does Not Prohibit Assignment of Receivables

Mr. Showers next alleges that the Defendants have breached the Account Contract by "failing to disclose that the customer's receivables will be pledged, or otherwise assigned and transferred to a trust with other customer's receivables" Amended Complaint at ¶¶ 109-110. In support of this claim, Mr. Showers seemingly relies upon an incomplete copy of what purports to be an exhibit to an SEC filing – a July 23, 2015 Indenture to which it appears Charter is a party.[21] To the extent that Mr. Showers is alleging that Charter has pledged its receivables as collateral for the obligations owing thereunder, that does not give rise to any actionable claim against Charter and its Officer. The law permits the owner of an account receivable to assign or pledge that receivable as security, for its own debt, and there is nothing in the Account Contract restricting or prohibiting Charter from doing just that.[22] Indeed, the Account Contract only prohibits Mr. Showers, as the Subscriber, from assigning or otherwise transferring the "Terms of Service and

---

[21] *See* Exhibit B (page ID #385 to 390) to the Amended Complaint.
[22] *See* 1 Corbin on Contracts Desk Edition § 49.07 (2024) ("Modern contract law favors the free assignability of contract rights.")

the Services and/or Equipment supplied by Spectrum" without specific written authorization from Spectrum. Exhibit B at ¶16.

### c. Billing Statements are Not Coupons and There Was No Lack of Consideration

Finally, Mr. Showers alleges that "[t]here is a breach of contract in the fact that there is a lack of consideration by Spectrum Charter Communications in gaining unearned interest from the Securities indorsed and tendered by the Plaintiff." *Id.* at ¶110. Mr. Showers seemingly asserts that the "billing statements" that Charter issued to him are "orders for payment" and that he "tendered instructions of how to apply the payments that were issued to him by the Defendant." *Id.* at ¶¶62-64. He then argues that "[b]ills are also known as receivables" and that "[t]hese receivables or bills of exchange, are originally issued by Spectrum Charter Communications to customers as orders for payment to their particular accounts" and that the "bills of exchange or bonds issued by Spectrum Charter Communications have interest coupons attached to them", *i.e.* the payment stub or remittance advice. *Id.* at ¶¶65, 67, 70. According to Mr. Showers, these "coupons" and "bills" are "securities in accordance with U.C.C. 8-102(15)." *Id.* at ¶¶72, 74. Mr. Showers, claiming he is the "entitlement holder" of these securities, says he "ordered the Defendant to transfer the instruments to the account for payment" *i.e.* pay the Plaintiff's bill with his bill. *Id.* at ¶¶78-80. By failing to follow these instructions, Mr. Showers alleges that "there is a lack of consideration by [Charter] in gaining unearned interest from the Securities." *Id.* at ¶110.

Article 8 of the Uniform Commercial Code concerns investment securities. Section 8-102(a)(15) thereof defines security as follows:

> "**Security,**" except as otherwise provided in Section 8-103, means an obligation of an issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:
>
> (i) which is represented by a security certificate in bearer or registered form, or the transfer of which may be registered upon books maintained for that purpose by or on behalf of the issuer;

16

(ii) which is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and

(iii) which:

(A) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or

(B) is a medium for investment and by its terms expressly provides that it is a security governed by this Article.

A bill from an internet service provider and the payment coupon or stub attached thereto are not "securities" under Section 8-102(a)(15) and they do not bear interest. Even if they could be considered "securities" and actually bore any interest, there is no failure of consideration as laid out in Mr. Showers' scheme of paying his bill with his bill. Mr. Showers' scheme to get free internet services from Charter does not mean that Charter and its Officer have breached the Account Contract due to a lack of consideration.

3.  Count Two of the Amended Complaint Fails to State a Claim for Refusal of Tender of <u>Payment Because the Tendered Bill of Exchange Was Not Valid</u>

In Count Two of the Amended Complaint Mr. Showers is alleging that "the Coupons tendered by Plaintiff are negotiable instruments", that "the Plaintiff wrote upon the coupon…negotiable words to negotiate and transfer the coupon to the account" and "tendered interest coupons to the Defendant in payment of the principal's account." Amended Complaint at ¶¶112, 114, 116. Mr. Showers alleges his account "should be discharged each and every month the instruments are tendered in payment of the account in accordance with U.C.C. 3-603(b)…" *Id.* at ¶121.

Having failed to establish the existence and validity of the alleged legal tender as set forth in section V(A)(2)(a) above, Plaintiff's claim that the Defendants' refusal to accept the tender as payment likewise must fail.

4.  Count Three of the Amended Complaint for Breach of Fiduciary Duty Fails to State a
    Claim Because the FRA Does Not Create a Private Right of Action

Literally construed, Count Three of the Amended Complaint alleges that Charter is a member bank of the Federal Reserve or "an 'institution-affiliated' party of the Federal Reserve" and is subject to Civil Money Penalties due to its alleged refusal "to allow the Plaintiff to utilize his interest in the [Account Contract] and account."  Amended Complaint at ¶¶ 7, 127, 128. Because the Federal Reserve Act does not provide the Plaintiff with a private right of action, Count Three fails as a matter of law.

Courts within this Circuit have held that Sections 16 and 29 of the Federal Reserve Act (codified as 12 U.S.C. §412 and 12 U.S.C. §504) do not provide a plaintiff with a private right of action and have dismissed claims brought thereunder by private citizens. *See e.g., Slaughter v. US Cellular,* 2023 WL 9051307 (E.D. Wis. Dec. 29, 2023). Only federal officials may enforce these statutes; private individuals do not have a private right of action to enforce Sections 16 or 29 of the Federal Reserve Act. *See Murphy v. Cap. One,* 2023 WL 5929340, at *3 (E.D. Mo. Sept. 12, 2023) ("the imposition of civil penalties under Section 29 is carried out by federal officials, and private individuals do not have a private right of action to enforce Section 29 of the Federal Reserve Act."); *see also White v. Lake Union Ga Partners LLC,* 2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023) (compiling cases supporting finding that Section 16 and Section 29 do not create a private right of action); *see also Morton v. Am. Express,* 2023 U.S. Dist. LEXIS 209318, at *6 (D.S.C. Oct. 18, 2023) ("[I]t is well settled that Sections 16 and 29 of the Federal Reserve Act do not create a private cause of action.").

Mr. Showers states that 12 U.S.C. §504 of the Federal Reserve Act, which provides for civil money penalties against "any person other than a member bank" that violates any provision of sections 371c (titled "Banking affiliates"), 371c-1 (titled "Restrictions on transaction with

affiliates"), 375a (titled "Loans to executive officers of banks"), 375b (titled "Extensions of credit to executive officers, directors, and principal shareholders of member banks"), 376 (titled "Rate of interest paid to directors") and 503 (titled "Liability of directors and officers of member banks") of the Federal Reserve Act is at issue in this lawsuit.

The Amended Complaint seemingly alleges Mr. Showers is entitled to civil penalties under Section 29 (*i.e.* §504 of the FRA as the Complaint states that Mr. Showers "has incurred a substantial financial loss as a result of the Defendant's breach of their fiduciary obligations.").

Further, Section 29 does not provide Mr. Showers with a cause of action as it provides that "[a]ny penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by (1) in the case of a national bank, by the Comptroller of the Currency; and (2) in the case of a State member bank, by the Board [of Governors of the Federal Reserve System]." 12 U.S.C. § 504(e). Courts have therefore rejected attempts by private individuals to bring claims under this statute. *Bockari v. J.P. Morgan Chase Bank,* 2016 WL 5234719, at *3 (E.D. Cal. Sept. 21, 2016) ("Plaintiff's complaint also references language contained in 12 U.S.C. § 504.... Plaintiff, as an individual, cannot maintain a claim under this section.").

Moreover, Mr. Showers fails to show that he, as an individual, may maintain an action under this civil penalty provision as any penalty imposed under §504 shall be assessed and collected by either the Comptroller of the Currency or the Board, 12 U.S.C. §504(e), and all penalties collected "shall be deposited into the Treasury." 12 U.S.C. § 504(g). *See Lillacalenia v. Kit Fed. Credit Union,* 2014 WL 3940289, at *2 (W.D. Ky. Aug. 12, 2014).

It is quite clear that the federal courts have consistently held that §504 does not create a private right of action. The Plaintiff's FRA claims in Count Three of the Amended Complaint fail as a matter of law and should be dismissed with prejudice.

5.  Count Four of the Amended Complaint Fails to State a Claim for Manipulative and Deceptive Practices Under The Securities and Exchange Act Of 1934 Because the Internet Services Account is Not a Security

Count Four of Mr. Showers' Amended Complaint alleges Defendants engaged in manipulative and deceptive practices under the Securities Exchange Act of 1934, "by attempting to gain payment on a 'debt' which has been securitized and profited over before the so-called 'debtor' even held the bill." Amended Complaint at ¶ 145. Construed liberally, Mr. Showers alleges that by not accepting and/or depositing his "tender" into his account, and continuing to seek payment, Defendants are engaging in manipulative and deceptive practices. Because Mr. Showers has not purchased any securities from Charter or its Officer – just internet services that he is trying to avoid paying for – this claim both fails as a matter of law and is frivolous.

Section 10(b) of the Securities Exchange Act of 1934 is codified at 15 U.S.C. §78j(b) - the statute to which Mr. Showers cites in Count Four of his Amended Complaint. *Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). Section 10(b) and Rule 10b-5 prohibit fraudulent or misleading statements of material fact in connection with the purchase or sale of a security. A plaintiff bringing §10(b) claim must plead the fraud with particularity, *see* Fed. R. Civ. P. 9(b), and allegations of scienter must be as compelling as any opposing inference. *Id.*

To state a claim under § 10(b) and Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." *Reynolds v. Skyline Real Estate Ltd.*, 2023 U.S. Dist. LEXIS 133024, at *17 (N.D. Ill. Aug. 1, 2023) (citing *Fryman v. Atlas Fin. Holdings, Inc.*, 462 F. Supp. 3d 891, 896 (N.D. Ill. 2020) (citations omitted).

Mr. Showers' securities fraud claim fails because: (1) he has not alleged that he purchased a security – only internet services; (2) he has not complied with the Private Securities Litigation Reform Act "PSLRA" or Rule 9(b)'s requirements for alleging misstatements; (3) he has not alleged scienter; and (4) he does not allege loss causation.

First, Mr. Showers has failed to allege that he purchased or sold a security. He has also failed to allege that he justifiably relied on any supposed false statement or omission by Charter which caused damages. Mr. Showers grossly mistakes the Account Contract to be "collateral security" that he himself issued and granted to Charter. Amended Complaint at ¶¶ 10, 23, 58. He further claims that Charter "issued billing statements" to him with interest coupons attached and "bills are securities" along with the coupons (i.e. payment remittance forms attached to them). *Id*. at ¶¶ 62, 70, 72, 74. No where in Mr. Showers' Amended Complaint does he claim that he purchased or sold a security.

Even if we construe Mr. Showers' claims liberally, the billing statements and payment coupons at issue are clearly not a "security" under the Securities Exchange Act. Under the Securities Exchange Act of 1934, the term "security" means:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S. Code § 78c. Billing statements do not fit into any of these categories. Billing statements and the attached coupons from a service provider, such as Charter, may be account statements but are not securities. A billing statement represents a claim for payment for services rendered – a billing statement is not an investment that comes with an expectation of profit. The billing statement Charter issued to Mr. Showers does not represent an investment of money with the expectation of profits, does not signify participation in a common enterprise, nor is it an instrument that can be traded or sold in a securities market.

Further, Mr. Showers' allegations in Count Four of the Amended Complaint do not satisfy the stringent pleading requirements under federal law. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (cited *by Leathermon v. Grandview Mem'l Gardens, Inc.*, 2011 WL 2445980, at *8 (S.D. Ind. June 15, 2011)). The heightened pleading standard for fraud requires "plaintiff to do more than the usual investigation before filing his complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), overruled on other grounds by *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) (citation omitted).

Mr. Showers' bare accusations of misrepresentation do not pass muster under the heightened pleading standard for fraud. For example, Mr. Showers' accusation that "the Defendant

has securitized the Plaintiff's receivables" (Amended Complaint at ¶ 144) and is "partaking in unfair and deceptive practices by attempting to fain payment on a 'debt' which has been securitized" (Amended Complaint at ¶ 145) does not provide the "who, what when, where, and how" of the alleged fraud. *See Rao v. BP Prods. N. Am., Inc*., 589 F.3d 389, 401 (7th Cir. 2009).[23] Likewise, Mr. Showers' allegation that the "Defendant has ignored the orders upon and accompanied with the instruments tendered by the Plaintiff [*i.e.*, the payment coupon attached to his bill] and pretends as though the instruments are worthless" (Amended Complaint at ¶ 143), lacks the required specificity upon which to base a claim for fraud especially since Mr. Showers' alleged "tenders" were not accompanied with actual funds to pay his bills. Count Four of the Amended Complaint does not satisfy Rule 9(b) and does not plead fraud with the required particularity. As such, the Court shall grant Defendants' Motion to Dismiss.

Additionally, the PSLRA requires "complaints alleging securities fraud [to] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598-99 (7th Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). The PSLRA also requires "[a]ny complaint alleging a material misstatement or omission [to] 'specify each statement alleged to have been misleading' and the 'reason or reasons why the statement is misleading.'" *Id.* at 599 (quoting 15 U.S.C. § 78u-4(b)(1)). On motion by a defendant, the Court must dismiss a complaint that does not meet these requirements. 15 U.S.C. § 78u-4(b)(3)(A); *see Reynolds,* 2023 U.S. Dist. LEXIS 133024, at *17-18. Mr. Showers alleges that Charter did not inform him that receivables or the Account Contract

---

[23] *See Commercial Contract Assignment LEXIS Practical Note* ("When an agreement is silent regarding assignability, Courts will generally look to permit assignment; provided, however, that it does not adversely affect the non-transferring party.")

could be assigned, but he conveniently fails to mention that the Account Contract did prohibit assignment by the Subscriber.[24]

Mr. Showers includes ninety-five (95) paragraphs of general factual allegations, and nowhere in those allegations does he plead that Defendants made a material misrepresentation or omission, nor does it identify the statements that were allegedly misleading and the reasons as to why they were supposedly misleading. Plaintiff's bare accusations of fraud fail to satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b), and as such, Count Four of the Amended Complaint must be dismissed.

### B. Because Mr. Showers' Claims are Frivolous and Intended to Harass, They Must be Dismissed with Prejudice

Mr. Showers' claims in this action– which revolves around Mr. Showers' theory that he can pay his bill with his bill – are largely identical to those asserted against First Premier and its Officers. There, as here, "Showers believes—or purports to believe—that his handwritten label" – "Accepted for Deposit Payable to bearer without recourse" - "transformed the bill into a check he could use to pay the bill." *See* Exhibit A and First Premier Order at pp. 8-11. The First Premier Court found that such claims were "frivolous". First Premier Order at pp.1. Because the claims against Charter and its Officer here are likewise frivolous and intended to harass, the Amended Complaint must be dismissed with prejudice.

A frivolous complaint is one in which "the petitioner can make no rational argument in law or facts to support his claim for relief." *Jones v. Morris*, 777 F.2d 1277, 1279-80 (7th Cir. 1985) (quoting *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983)); *see also Brandon v. D.C. Bd. of Parole*, 734 F.2d 56, 59 (1984) (a frivolous *pro se* complaint is one where "there is indisputably

---

[24] "These Terms of Service and the Services and/or Equipment supplied by Spectrum are not assignable or otherwise transferable by Subscriber, without specific written authorization from Spectrum." Exhibit B at ¶16.

absent any factual and legal basis for the asserted wrong."). Further, the recurrent nature of Plaintiff's claims highlights his bad faith efforts of exploiting the legal process. "By obfuscating facts and using archaic legal jargon, it seems the Plaintiff hoped to warp the legal system into a cudgel; one they could swiftly use against their creditors to not only escape debt, but to secure a windfall *and* force their creditors to continue giving them credit in perpetuity." *Sabrina v. Scott Credit Union*, 2023 WL 8470105, at *7 (S.D. Ill. Dec. 7, 2023) (rejecting similar banking theories as an "attempt to pervert the justice system").

Here, as in the First Premier Action, Mr. Showers can make no rational argument in law or fact to support his claims for relief. In both actions, Mr. Showers alleges that he can pay his bill with his bill by merely writing "Accepted for Deposit Payable to bear without recourse" on the payment stub and, because the Defendants disagreed and refused to accept this supposed tender, they allegedly breached their fiduciary duties to him and violated the Federal Reserve Act, among other things.   The claims alleged in the Amended Complaint are clearly frivolous and not grounded in law or fact. As the First Premier Court opined,

> The whole edifice is nonsense.
>
> *****
>
> Nonsense claims are, rightly or wrongly, said not to engage this Court's jurisdiction, *Bell v. Hood*, 327 U.S. 678, 682 (1946) (at once announcing and questioning the rule), and usually dismissals for want of jurisdiction are without prejudice, *El v. AmeriCredit Fin. Servs.*, *Inc.,* 710 F.3d 748, 751 (7th Cir. 2013). That would mean the Court must dismiss the case without prejudice. But a dismissal without prejudice would let Showers refile in this Court, or another, which wastes everybody's time – and taxpayers' money, too. *See U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Fortunately, there is an exception to deal with just this circumstance: "a suit that either is frivolous or…intended to harass, can justifiably be dismissed with prejudice to avoid burdening the court system with a future suit that should not be brought – anywhere." *Georgakis v. Illinois State Univ.,*722 F.3d 1075, 1078 (7th Cir. 2013) (citing *United States v. Funds in the Amount of $574, 840*, 719 F.3d 648, 652 (7th Cir. 2013) and *El*, 710 F.3d at 751). That is much the best course here; there is no reason to indulge Showers any further.

25

*See First Premier* Order at p. 2-3.

Accordingly, because the claims alleged against Charter and its Officer in the Amended Complaint are frivolous and intended to harass, the Amended Complaint should be dismissed with prejudice.

## C.  Mr. Showers' Jury Waiver Must Be Enforced

This action must be dismissed to prevent further abuse by Mr. Showers. However, in the event that this action should be permitted to proceed, the Court should enforce Mr. Showers' waiver of his right to a jury trial.  The Account Contract expressly states as follows:

> SUBSCRIBER AGREES THAT, BY ENTERING INTO THIS AGREEMENT, SUBSCRIBER AND SPECTRUM ARE WAIVING THE RIGHT TO A TRIAL BY JUDGE OR JURY.[25]

*See* Account Contract at ¶30.

It is black letter law that "the constitutional right to a jury trial … may be waived[.]" *Maytag Co. v. Meadows Mfg. Co.*, 45 F.2d 299, 301 (7th Cir. 1930); *see also*, *IFC Credit Corp*, 512 F.3d at 991-924 (citing *Abbott Labs. v. Takeda Pharm. Co*., 476 F.3d 421, 423 (7th Cir. 2007)) (upholding the validity and enforceability of a jury waiver provision); *Garcia v. Wayne Homes*, 2002 Ohio App. LEXIS 1917, at *1 (Ct. App. 2002) ("waivers of jury trial in …forms of consumer transactions have routinely been upheld by courts…"); *Janiga v. Questar Capital Corp*., 615 F.3d 735, 743 (7th Cir. 2010) ("the plain language of the contract includes an express waiver of the right to a jury trial, and we uphold such waivers even in form contracts."); *see also IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989 (7th Cir. 2008)

---

[25] While the Account Contract contemplates arbitration, Mr. Showers has invoked this Court's jurisdiction, waiving his right to demand arbitration. The Defendants do not object to a bench trial but do not consent, and object to, a trial by jury.

("[m]any courts accordingly hold that an agreement to resolve a dispute in a bench trial is no less valid than the rest of the contract in which the clause appears.")

Based on the forgoing, Mr. Showers' waiver of his right to demand a trial by jury should be enforced if the Court permits this matter to proceed.

## V.    CONCLUSION

For the foregoing reasons, Mr. Showers has failed to state a claim upon which relief may be granted against Charter and its Officer, and therefore his Amended Complaint against the Defendants should be dismissed with prejudice pursuant to Rule 12(b)(6) and because the claims are frivolous. Further, in the event that case should proceed, the Court should enforce the jury waiver given by Mr. Showers in the Account Contract.

Respectfully submitted,

*/s/ Emily L. Pagorski*
Lea Pauley Goff
Emily L. Pagorski
Komal Tailor
STOLL KEENON OGDEN PLLC
400 West Market Street, Suite 2700
Louisville, Kentucky  40202
Phone: (502) 333-6000
lea.goff@skofirm.com
emily.pagorski@skofirm.com
komal.tailor@skofirm.com

COUNSEL FOR DEFENDANTS
CHARTER COMMUNICATIONS
OPERATING, LLC AND JESSICA
FISCHER